IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : |
| ANDRE BAILEY | : CRIMINAL NO. 23-498 |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS**

The United States of America, by and through its attorneys, Jacqueline C. Romero, United States Attorney in and for the Eastern District of Pennsylvania, Meagan Gordon, Special Assistant United States Attorney, and Michael Miller, Assistant United States Attorney, respectfully submits this memorandum in opposition to defendant Bailey's "Motion to Dismiss" filed at ECF Doc. No. 59.

**I.    INTRODUCTION**

On November 30, 2023, the defendant was indicted on one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), and one count of possession of a firearm not registered to the defendant in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d).  The indictment stems from an incident on May 31, 2023, in which Philadelphia Police Officer Momme stopped the defendant's vehicle, a blue Nissan Quest, and observed a firearm. The defendant then fled from police, and when the car was located shortly thereafter it contained an Aero Precision M5 rifle, bearing serial number US201757, loaded with twenty-five live rounds of ammunition; an Anderson AM15 .300 caliber

1

rifle, bearing serial number 21395505; a FGC 9 short barrel rifle, with no serial number, loaded with twenty-eight 9mm rounds, and a second magazine containing twenty-one 9mm rounds. The FGC 9 firearm was not registered to the defendant in the National Firearms Registration and Transfer Record as required by law for a firearm of this nature, as defined in 26 U.S.C. § 5845(a). The car was located on the 5100 block of Sheldon Street in Philadelphia, Pennsylvania.

Prior to his arrest for the instant offenses, the defendant was convicted of nine offenses across three separate cases in Luzerne County, Pennsylvania, rendering him ineligible to possess a firearm. On December 6, 2005 the defendant entered into a guilty plea on three cases all consisting of felony offenses. The defendant was sentenced on February 21, 2006. First, under CP-40-CR-2502-2005, the defendant pled guilty to three counts of possession of a controlled substance with the intent to deliver, in violation of 35 Pa.C.S. § 780-113(a)(30), as ungraded felony offenses, in addition to one count of escape, in violation of 18 Pa.C.S. § 5121(a), a felony of the third degree. Each of the four counts are punishable by up to seven years of incarceration under Pennsylvania law. The defendant was sentenced to thirty-six months to seventy-two months of incarceration on each of the three counts of possession of a controlled substance with the intent to deliver, and twelve to twenty-four months of incarceration on the one count of escape.[1] Second, under CP-40-CR-0002500-2005, the defendant pled guilty to robbery of a motor vehicle, in violation of 18 Pa.C.S § 3702(a), a felony of the first degree punishable by up to twenty years of incarceration; criminal trespass, in violation of 18 Pa.C.S § 3503(a)(2)(ii), a felony of the third degree punishable by up to seven years of incarceration; unlawful restraint, a

---

1 All four sentences were set to run concurrent to each other.

misdemeanor of the first degree punishable by up to five years of incarceration; and simple assault, a misdemeanor of the second degree punishable by up to two years of incarceration. In this case, the defendant was sentenced to eighteen to thirty-six months of incarceration for robbery of a motor vehicle, nine to eighteen months on criminal trespass, six to twelve months on unlawful restraint, and six to twelve months on simple assault.[2] Finally, on CP-40-CR-0002863-2005 the defendant pled guilty to one count of possession of a controlled substance with the intent to deliver and was sentenced to twelve to twenty-four months of incarceration.

On December 5, 2023, the defendant was arraigned before the Honorable Richard A. Lloret and expressed his desire to proceed pro se. This request was granted on December 7, 2023, though standby counsel was appointed. The court appointed Timothy Wright, Esquire, as standby counsel for the defendant. On December 22, 2023, the defendant filed a motion to dismiss the charges. The Court denied this motion on March 8, 2024. On June 13, 2024, the defendant filed a second motion to dismiss the charges. The government, in reading the defendant's pleading liberally, responds as follows.[3]

## II.  **DISCUSSION**

The defendant alleges that several different grounds warrant dismissal in his motion. As explained below, each argument is meritless and should be denied.

---

2 All four sentences were set to run concurrent to each other.

3 The defendant's motion alleges, in several different places, a general purported bar to his prosecution because he is "a living, natural spiritual man," that the United States is "a legal fiction . . . a corporation" and the general inapplicability of laws and statutes to individuals. The defendant has raised these, or similar, claims in prior filings, all of which have been denied by the Court. Therefore, the government does not respond to these repetitive allegations and relies upon its prior responses and rulings from the Court.

A.     **Defendant's Motion to Dismiss – Paragraph 3**.

The defendant argues that discovery is incomplete because there are no competent witnesses with names and addresses.  This is both inaccurate and is a request that is outside the scope of pretrial discovery. Consequently, the defendant's motion should be denied.

The United States understands, accepts and affirms its obligations under *Brady*[4], *Giglio v. United States*, 405 U.S. 150 (1972)[5], Rules 12 and 16 of the Federal Rules of Criminal

---

[4] Under *Brady v. Maryland*, and its progeny, the government also has the obligation to disclose exculpatory evidence -- evidence that is favorable and material to the defense.  Strictly speaking, *Brady* "'is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation.'" *United States v. Starusko*, 729 F.2d 256, 262 (3d Cir. 1984) (citation omitted). Exculpatory evidence includes material that goes to the heart of the defendant's guilt or innocence.  If the exculpatory evidence "creates a reasonable doubt" as to the defendant's culpability for the crimes charged, it will be held to be material.  *Id.* at 260 (citations omitted).  *See also United States v. Bagley*, 473 U.S. 667, 682 (1985) (Evidence is "material" when it is reasonably probable that, "had the evidence been disclosed to the defense, the result of the proceeding would have been different.").  *Brady* material must be disclosed "in time for its effective use at trial."  *United States v. Higgs*, 713 F.2d 39, 44 (3d Cir. 1983), *cert. denied*, 464 U.S. 1048 (1984).

[5] It is equally well-settled that disclosure of evidence that may be used to discredit government witnesses is <u>not</u> directly exculpatory as to a <u>defendant's</u> substantive guilt, and need not be disclosed in advance of trial.  The Third Circuit held in *United States v. Higgs* that disclosure of witness credibility evidence at the time of trial sufficiently ensures a defendant's right to a fair trial:

> No denial of due process occurs if *Brady* material is disclosed to [the defendant] in time for its effective use at trial....  The *Brady* material in this case was information that [the defendant] could use on cross-examination to challenge the credibility of government witnesses.  For that type of material, we think [the defendant's] right to a fair trial will be fully protected if disclosure is made the day that the witness testifies.  Disclosure at that time will fully allow [the defendant] to effectively use that information to challenge the veracity of the government's witnesses.

713 F.2d at 44.
Significantly, in *Higgs*, the court specifically rejected the argument "that the requested information might also be used by defense counsel for investigating their case."  *Id.* at 43 n.5.

4

Procedure, and the Jencks Act, 18 U.S.C. § 3500[6]. However, the law is well-settled that "[c]riminal pretrial discovery is, of course, vastly different from discovery in civil cases." *United States v. Ramos*, 27 F.3d 65, 67-68 (3d Cir. 1994). "In contrast to the wide-ranging discovery permitted in civil cases, Rule 16 of the Federal Rules of Criminal Procedure delineates the categories of information to which defendants are entitled in pretrial discovery in criminal cases[7], with some additional material being discoverable in accordance with statutory pronouncements

---

6 Under the Act itself, the government must produce statements of the government witnesses at the <u>end</u> of their direct examination:
> In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a government witness or prospective government witness (other than the defendant) shall be the subject of subpoena [sic] discovery, or inspection until said witness has testified on direct examination in the trial of the case.

18 U.S.C. § 3500(a).

The United States Supreme Court and the Court of Appeals for the Third Circuit both have confirmed that Jencks Act material need not be produced until after the witness testifies at trial. *Palermo v. United States*, 360 U.S. 343, 359 (1959); *United States v. Murphy*, 569 F.2d 771, 773 (3d Cir. 1978); *United States v. Kenny*, 462 F.2d 1205, 1212 (3d Cir. 1972).

7 Federal Rule of Criminal Procedure 16 requires the government to produce certain categories of information upon request of the defendant: 1) the defendant's statements that are in written or recorded form (including grand jury testimony) and any oral statement given by the defendant to a person then known by the defendant to be a government agent (Rule 16(a)(1)(A) & (B)); 2) the defendant's prior criminal record (Rule 16(a)(1)(D)); 3) all documents and tangible objects within the possession, custody or control of the government which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant (Rule 16(a)(1)(E)); 4) results or reports of physical or mental examinations or other types of scientific tests in the government's possession which are material to the preparation of the defense or are intended for use by the government as evidence in chief at the trial (Rule 16(a)(1)(F)); and 5) a written summary of expert testimony the government intends to use during its case in chief at trial (Rule 16(a)(1)(G)). The obligation to provide discovery is an ongoing obligation throughout the course of the litigation. Fed. Rule Crim. Proc. 16(c).

and the due process clause of the Constitution." *Id.* *Accord United States v. Casseus*, 282 F.3d 253, 257 (3d Cir. 2002) (affirming district court's denial of defense request for disclosure and interview of eyewitness/anticipated government trial witness; "[I]t is clear that a criminal defendant does not have the right to full discovery of the government's case.")  As the Supreme Court explained in *United States v. Ruiz*, 536 U.S. 622, 629 (2002), the Constitution does not require the government to share "all useful information" with the defendant during discovery.

Outside of the aforementioned statutes, rules, and case law, a defendant has no general constitutional right to pretrial discovery. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Those rights conferred by statute, rule, and case law cannot be used to compel the United States to disclose the minutia of its evidence, its trial strategy, or its investigation. *United States v. Fiorvanti*, 412 F.2d 407, 411 (3d Cir.), *cert. denied*, 396 U.S. 837 (1969). Thus, *Brady*, Rule 16, and the Jencks Act should be construed as limits on discovery, within which limits the trial court may exercise its discretion. *See United States v. Randolph*, 456 F.2d 132, 136 (3d Cir.), *cert. denied*, 456 U.S. 132 (1972); *Fischbach & Moore, Inc.*, 576 F. Supp. at 1393 (*Brady* is not a discovery device); *United States v. Deerfield Specialty Papers*, 501 F. Supp. 796, 819 (E.D. Pa. 1980) (pretrial discovery rules are not meant to permit "fishing expeditions" into government case files); *cf. United States v. Adams*, 759 F.2d 1099, 1111 (3d Cir.) (discovery is within the discretion of the district court), *cert. denied*, 474 U.S. 906, 971 (1985); *United States v. Liebert*, 519 F.2d 542, 548 (3d Cir.) (defendant's discovery demands must be reasonable), *cert. denied*, 423 U.S. 985 (1975).

Here, in this matter, discovery was initially provided to the defendant and standby counsel on December 18, 2023. This included the indictment, various police paperwork, records,

the defendant's criminal history, and body worn camera footage. Additional discovery later became available and was provided on May 1, 2023. This included the report documenting the findings of DNA analysis, and two interstate nexus reports regarding two firearms. Some additional discovery was provided to the defendant on May 16, 2024, including additional police paperwork and additional records obtained from various government departments. Discovery was served by hand delivery or mail, consistent with local rules. Therefore, the defendant's allegation that discovery was not provided is entirely incorrect. Moreover, as is clear from the sources provided above, the government is not obligated to provide "addresses" of witnesses in pretrial discovery. As a result, there has been no violation of Federal Rule of Criminal Procedure 16, nor of any other requirement to provide information. If there had been, none of the appropriate remedies for discovery violations is dismissal of the indictment. Therefore, the Court should deny the defendant's motion on this ground.

**B.      Defendant's Motion to Dismiss Paragraph 4.**

The defendant alleges his "civilian due process rights" were violated because "there was no reasonable articulable suspicion, or a single articulable fact that a crime was committed to perform a traffic stop." This is incorrect, factually and legally.

The Fourth Amendment to the Constitution protects individuals against "unreasonable searches and seizures." U.S. Const. amend IV. "But not every interaction between a police officer and a citizen is protected by the Fourth Amendment." *United States v. Smith*, 575 F.3d 308, 312 (3d Cir. 2009). In the seminal case of *Terry v. Ohio*, the Supreme Court recognized an exception to the Fourth Amendment presumption that search and seizures conducted outside the judicial process are per se unreasonable. 392 U.S. 1 (1968). This now well-established exception

to the Fourth Amendment's warrant requirement permits an officer to stop and briefly detain a suspect "when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).

"A reasonable, articulable suspicion must be supported by 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.'" *United States v. Holloway*, 489 F. App'x 591, 593 (3d Cir. 2012) (*quoting Johnson v. Campbell*, 332 F.3d 199, 205 (3d Cir. 2003) (*quoting Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968))). "'[R]easonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Id*. That said, "the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Id*. (*citing United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

In cases involving a vehicle, an automobile stop is a "seizure" subject to the Fourth Amendment, and the stop must be reasonable. *Whren v. United States*, 517 U.S. 806, 810 (1996); *see United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975) (a routine traffic stop is analogous to a "*Terry* stop" and is also analyzed under the reasonable suspicion standard); *see also United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995) (*applying Terry* standard to a traffic stop); *United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004). An automobile stop is a reasonable "seizure" when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop. *United States v. Delfin-Colina*, 464 F.3d 392, 398 (3d Cir. 2006). Neither a warrant nor probable cause is required; rather the reasonable suspicion standard applies. *Delfin-Colna*, 464 F.3d at 397.

Here, as explained above, the justification for the stop in this case far exceeded reasonable suspicion. Officer Momme observed the defendant operating a vehicle that was committing several motor vehicle violations.  Officer Momme observed violations of Title 75 Pa.C.S § 1332 Display of registration plate; Title 75 Pa.C.S. § 4306 Use of multiple-beam road lighting equipment; Title 75 Pa.C.S. § 4303(b) Rear lighting; and Title 75 Pa.C.S. § 4524(e) Sun screening and other materials prohibited. Indeed, during the stop, the officer told the defendant that he was currently violating multiple traffic laws at the time. The officer's direct observation of illegal activity far exceeds reasonable suspicion, and therefore the defendant's argument fails.

Second, the defendant alleges the "Supreme court has ruled you do not need a driver's license, registration or insurance to travel the roadways" unless using the roadways for commerce. This is false, and further is not grounds for dismissal. The defendant fails to cite any case law or identifying information that would prove his allegation that a driver's license, registration or insurance is not required to travel the roadways. He fails in this regard, likely because 75 Pa.C.S. § 1501 clearly states that, "No person, except those expressly exempted, shall drive any motor vehicle upon a highway or public property in this Commonwealth unless the person has a driver's license valid under the provisions of this chapter. As used in this subsection, the term "public property" includes, but is not limited to, driveways and parking lots owned or leased by the Commonwealth, a political subdivision or an agency or instrumentality of either." Exemptions are listed in § 1502 and include Federal Government employees while operating a vehicle owned by the government and on official business, a person in the armed forces of the United States with a valid military driver's license operating an official vehicle on official business, any nonresident who is at least 16 years old and possesses a valid driver's license in the

person's home state or country, any person on active duty in the armed forces of the United States who has a valid driver's license issued by a foreign country, or any person 14 years or older operating an implement of husbandry. 75 Pa.C.S. § 1502. None of these exceptions apply to the defendant, and so his assertion that a driver's license is not required is invalid. Even if the defendant's point were valid, however, the defendant was not indicted for driving without a driver's license and, as noted above, there were other legitimate basis to stop the defendant's vehicle for motor vehicle infractions that had nothing to do with his license status. So proving that a driver's license was not required at the time Mr. Bailey was operating the vehicle would not warrant dismissal.

Third, the defendant alleges the traffic stop was a "violation of Philadelphia's own Safety and Traffic Equity in Policing, or STEP Act, that prevents police from stopping conveyances for broken taillights, expired inspection, registration, etc." The government believes that the defendant is referring to the Philadelphia Driving Equality Act. This order prohibits Philadelphia police officers from initiating a motor vehicle stop for a number of specifically enumerated motor vehicle violations.[8] As noted above, the defendant was seen violating some of the above statutes, as well as others. The executive order instructs police officers not to stop drivers *solely* for one or more violations of these specific statutes, but notes police officers may use their

---

8 These violations are as follows: Title 75 Pa.C.S. § 1301 Registration of vehicles; 75 Pa.C.S. § 1310.1(c) Temporary Registration Permits; 75 Pa.C.S. 1332(a) Display of Registration Plate, where the violation pertains to a plate not securely fastened to the vehicle but such plate is otherwise clearly displayed; 75 Pa.C.S. § 4302 Periods For Requiring Lighted Lamps, where the violation for lighting equipment not illuminating is limited to a single brake light, head light, or running light…; Title 75 Pa.C.S. § 4524(c) other obstruction; Title 75 Pa.C.S. § 4536 Bumpers; Title 75 Pa.C.S. § 4703 Operation of Vehicle Without Official Certificate of Inspection; and Title 75 Pa.C.S. § 4706(c)(5) Unlawful Operation Without Evidence of Emission Inspection

10

discretion to issue citations for the same violations if a driver is stopped for any other violation of the Pennsylvania Vehicle Code. Here, the defendant was stopped for a number of violations, some of which were not barred by the Driving Equality Act. As above, even if the defendant were correct that the traffic stop violated the Driving Equality Act, the defendant has failed to state why this fact would warrant dismissal. The Driving Equality Act prohibits, as a policy matter, the Philadelphia Police from conducting certain types of vehicle stops however the Act does not in any way invalidate the legitimacy of those violations within the Pennsylvania Motor Vehicle Code – meaning that the local Philadelphia Police may be barred, per city ordinance, from conducting certain stops. However, that does not mean that the violation did not occur nor does it mean that any stop involving the delineated offenses is per se unconstitutional for Fourth Amendment purposes. Even if the stop were unlawful, dismissal would not be warranted because the Fourth Amendment's protections exist as a deterrent to unlawful search or seizure, and the rule "is neither intended nor able to 'cure the invasion of the defendant's rights which he has already suffered.' " *United States v. Leon*, 468 U.S. 897, 906 (1984), *quoting Stone v. Powell*, supra, 428 U.S., at 540, 96 S.Ct., at 3073 (WHITE, J., dissenting).

      Moreover, the defendant does not argue that such a violation would defeat the indictment in this case, or offer any other explanation as to why dismissal would be warranted. The *Leon* Court addresses remedies to Fourth Amendment violations – none of which occurred here – stating, "the rule thus operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.' " *Id.*, quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974). Therefore, the motion should also be denied on these grounds.

### C. Defendant's Motion to Dismiss Paragraph 8.

The defendant states previous proceedings have failed to outline which part of the Constitution was violated. The defendant seems to allege here that only a violation of the Constitution can result in federal charges. That is inaccurate. As the court is well aware, the United States' criminal offenses are outlined in a variety of statutes, including, primarily, within Title 18 of the United States Code. The indictment in this matter specifically informs the defendant of the nature of his crime, that is being a felon in possess of a firearm in violation of Title 18, United States Code, Section 922(g)(1), and possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d). While these offenses are not Constitutional violations, the legality of the charges is nonetheless clear.[9] The Supreme Court has examined the issue of limits

---

9 Almost every judge in this Circuit to address the Constitutionality of the felon-in-possession statute, 18 U.S.C. § 922(g)(1), upheld the prohibition of firearm possession by defendants such as Mr. Bailey. *See United States v. Ladson,* 2023 WL 6810095 (E.D. Pa. Oct. 16, 2023) (Baylson, J.); *United States v. Green*, 2023 WL 6164407 (E.D. Pa. Sept. 21, 2023) (Diamond, J.); *United States v. Pearson*, 2023 WL 6216527 (E.D. Pa. Sept. 25, 2023) (Kearney, J.); *United States v. Ames*, 2023 WL 5538073 (E.D. Pa. Aug. 28, 2023) (Kenney, J.); *United States v. Santiago*, 2023 WL 716785 (E.D. Pa. Oct. 31, 2023) (Leeson, J.); *United States v. Hedgepeth*, 2023 WL 7167138 (E.D. Pa. Oct. 31, 2023) (Marston, J.) (denying challenge by defendant previously conviction of unlawful possession of firearm, reckless endangerment, and burglary, "given the scads of historical examples of lawmakers disarming those who they believed posed a potential danger to society"); *United States v. Harris*, 2023 WL 7927758 (E.D. Pa. Nov. 16, 2023) (McHugh, J.) (denying motion by person previously convicted for firearm possession charges, based on the "exhaustive" analysis and consistent determinations by all other judges in the district to address the issue; citing decisions of 12 other district judges); *United States v. Ransom*, No. 23-405, ECF 20 (E.D. Pa. Nov. 8, 2023) (Murphy, J.) ("it is unquestionably consistent with historical precedent to disarm violent offenders," and "considering the strong and established connection between drug trafficking and violence," § 922(g)(1) is constitutional with regard to a person previously convicted of drug trafficking offenses); *United States v. Smith-Graves*, No. 23-194, ECF 27 (E.D. Pa. Oct. 5, 2023) (Murphy, J.) (finding historical analogues supporting the bar on firearm possession by a defendant previously convicted of robbery, assault, and resisting arrest); *United States v. Blackshear*, 2023 WL 5985284, at *3 (E.D. Pa. Sept. 14, 2023) (Pappert, J.) ("Blackshear's eight convictions—six of which involve drugs and two of

on an individual's Second Amendment right to bear arms, such as each of these statutes imposes, and stated clearly this right is "not unlimited." *D.C. v. Heller*, 554 U.S. 570, 626 (2008). This Court has previously held that "[Title 18 U.S.C.] § 922(g)(1) is a facially constitutional restriction on an individual's Second Amendment right." *United States v. Hedgepeth*, No. CR 22-377-KSM, 2023 WL 7167138, at *7 (E.D. Pa. Oct. 31, 2023). Therefore, the charges on which the defendant was indicted are lawful, and the defendant's argument fails.

Second, the defendant argues, "It does not state in the Constitution that if convicted of a crime you lose all constitutional rights." Considering that the defendant is charged with violating 18 U.S.C. § 922(g)(1), possession of a firearm by a felon, the government assumes that the defendant is alleging that he did not "lose all constitutional rights" (including the right to keep and bear arms) when he was convicted of prior offenses. As the Court is aware, and was previously decided in this matter, the defendant did, in fact, lose the right to possess a firearm, both under state law (Title 18 Pa.C.S. § 6105) and federal law (Title 18 U.S.C. § 922(g)(1))

---

which involve illegal gun possession—demonstrate that, if armed, he poses a danger to society. Drugs and guns are a 'dangerous combination' that increases the risk of violence."); *United States v. Wright*, 2023 WL 8237250 (E.D. Pa. Nov. 27, 2023) (Perez, J.); *United States v. Cotton*, 2023 WL 6465836, at *1 (E.D. Pa. Oct. 4, 2023) (Pratter, J.); *United States v. Tarpley*, 2023 WL 7190479 (E.D. Pa. Nov. 1, 2023) (Quinones Alejandro, J.) (as applied to defendant previously convicted of multiple drug trafficking offenses); *United States v. Springs*, No. 22-411, ECF 23 (E.D. Pa. Nov. 6, 2023) (Quinones Alejandro, J.) (as applied to defendant previously convicted of multiple firearm possession offenses); *United States v. Brown*, 2023 WL 7021181 (E.D. Pa. Oct. 25, 2023) (Rufe, J.) (prior convictions for burglary, drug trafficking, firearms violations, and eluding the police); *United States v. LaForte*, No. 20-231, ECF 80 (E.D. Pa. Oct. 19, 2023) (Sanchez, C.J.) (*Range* is inapplicable to defendant who previously incurred 19 felony convictions for money laundering, grand larceny, conspiracy to perform a felony, and conspiracy to operate an illegal gambling business; notes that larceny in the early Republic was punished by death and dispossession of property); *United States v. Lanier*, 2023 WL 8255101 (E.D. Pa. Nov. 29, 2023) (Slomsky, J.); *United States v. Campbell*, No. 22-394, ECF 29 (E.D. Pa. Sept. 28, 2023) (Surrick, J.) (§ 922(g) upheld as applied to defendant previously convicted of a firearm licensing offense and drug possession).

following his prior convictions. This issue is moot. The defendant raised this issue previously, and the Court denied the motion to dismiss on these grounds in March 2024. The defendant has raised no new claim or issue, and as such the Court should deny the motion on this ground.

### D. Defendant's Motion to Dismiss Paragraph 9.

Finally, the defendant claims that dismissal is warranted because he was not brought to the grand jury proceeding when the indictment was granted, and was not given a chance to rebut the case in front of the grand jury. The defendant's motion fails because a defendant has no right to be present, nor to address the grand jury.

The grand jury procedures are governed by Federal Rule of Criminal Procedure Rule 6. Federal Rule of Criminal Procedure 6(d) specifically addresses who may be present while the grand jury is in session: attorneys for the government, the witness being questioned, interpreters when needed, and a court reported or an operator of a recording device. Fed. R. Crim. P. 6. The defendant has no right to be present, nor to rebut his case in front of the grand jurors. The appropriate time to do so would be at trial.

In the second portion of this motion the defendant argues he was not properly served prior to being detained, and he should have seen a warrant prior to seeing any magistrate. The defendant cites nothing to support this assertion. His belief is incorrect. This argument was previously raised orally by the defendant, at which point the Court informed him his belief was incorrect, and no notice was required before the defendant was detained. The defendant appeared in magistrate court on December 5, 2023, at which time he was provided with a copy of the indictment. The government believes the defendant uses the term "warrant" to mean a document providing notice of the charges against him. Such notice was provided when the defendant

received a copy of the indictment. On December 5, 2023, the defendant was given time to review the indictment, and discuss with an attorney if desired. The defendant's due process rights were not violated. As a result, the defendant's motion should be denied.

**E. Defendant's Motion to Dismiss Paragraph 10.**

The defendant, again, claims that his prior convictions do not bar his possession of a firearm. This issue is moot as it has been previously addressed by this Court. The defendant previously filed a Motion to Dismiss on December 22, 2023 (ECF No. 11). The government's response was filed on January 8, 2024 (ECF No. 13), and arguments were heard on March 7, 2024. The defendant's motion was denied (ECF No. 27). The defendant does not now present any new arguments or support and therefore this request should be denied, as it has already been addressed.

### III.  CONCLUSION

For the foregoing reasons, the Court should deny defendant's motion to dismiss.

Respectfully Submitted,

JACQUELINE C. ROMERO
United States Attorney

_/s/Meagan Gordon_
Meagan Gordon
Special Assistant United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within *Government's Opposition to Defendant's Motion to Dismiss* has been served by me this date by electronic filing or mail upon:

**Andre Bailey**
Inmate Number 76288-510
Federal Detention Center – Philadelphia
700 Arch Street
Philadelphia, PA 19106

**Timothy Wright, Esquire**
Federal Defender's Office
The Curtis Center Building
601 Walnut Street – Suite 540 West
Independence Square West
Philadelphia, PA 19106

_/s/Meagan Gordon_
Meagan Gordon
Special Assistant United States Attorney

June 20, 2024