**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| *v.* | |
| **ANDRE BAILEY** | **No. 23-498-KSM** |

## MEMORANDUM

**MARSTON, J.**                                                                **December 3, 2024**

*Pro se* Defendant Andre Bailey faces federal charges for unlawfully possessing a firearm, in violation of 18 U.S.C § 922(g)(1), and for possessing an unregistered firearm, in violation of 26 U.S.C § 5861(d). (Doc. No. 1 at 1–2.) Bailey now moves for a pre-*Franks* hearing on several grounds. (Doc. No. 90.) The Government opposes Bailey's motion. (*See* Doc. No. 94.) It argues that most of the issues Bailey raises are not proper grounds for a *Franks* hearing because "numerous of [Bailey's] claims make no reference to a search warrant. (*Id.* at 4.) For the reasons stated below, the Court denies Bailey's motion.

### I.       Background

On May 31, 2023, Officer Brad Momme pulled over a blue minivan for several traffic violations. (Doc. No. 112 at 1.) During the stop, Officer Momme saw the driver—later identified as Andre Bailey—wearing a bullet proof vest and observed a firearm on the passenger seat. (*Id.* at 2.) Officer Momme told Bailey that he saw a firearm and asked Bailey to put his hands where he could see them. Bailey responded the firearm was a toy and then fled from the traffic stop. (*Id.*) Approximately twenty minutes later, Officer Momme located the same minivan parked and unoccupied. Officer Momme observed a different firearm inside the vehicle. (*Id.* at 2–3.) So, he called in the vehicle and Philadelphia Police Department detectives took over the investigation. After Detective William Lackman interviewed Officer Momme,

Detective Lackman prepared an affidavit of probable cause and applied for a warrant to search Bailey's minivan.  (*Id.*)  A state magistrate judge issued the warrant on June 1, 2023, and it was executed the same day.  (*Id.* at 3.)  Several firearms were recovered during the search of the minivan.  (*Id.* at 3–4.)

On November 7, 2024, Bailey filed a motion for a "pre-*Franks* hearing."  (Doc. No. 90.) In it, he argues that (1) Officer Momme fabricated evidence; (2) there are inconsistencies between Officer Momme's interview with Detective Lackman and the affidavit of probable cause; (3) Officer Momme misrepresented what Bailey had said during the traffic stop; (4) Officer Momme falsely stated that Bailey's high beams were constantly on; (5) Officer Momme has several pending internal affairs investigations; and (6) items were not listed on the property receipt of his car.  (*Id.* at 1–2.)  The Government opposes the motion.  (*See* Doc. No. 94.)

## II.    Discussion

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation."  U.S. Const. Amend. IV.  Under this clause, the Supreme Court has held that "a criminal defendant has the right to challenge the truthfulness of factual statements made in an affidavit of probable cause supporting a warrant subsequent to the ex parte issuance of the warrant."  *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006) (citing *Franks v. Delaware,* 438 U.S. 154, 165 (1978)).  The Court held, however, that a Defendant is not automatically entitled to a hearing when he exercises this right.  *Franks*, 438 U.S. at 155–56; *see also United States v. Pavulak*, 700 F.3d 651, 665 (3d Cir. 2012) ("The right to a *Franks* hearing is not absolute[.]").  Rather, to get a *Franks* hearing, a "defendant must first (1) make a substantial preliminary showing that the affiant knowingly or recklessly included a false statement in or omitted facts from the affidavit, and (2) demonstrate that the false statement or

2

omitted facts are necessary to the finding of probable cause." *Pavulak*, 700 F.3d at 665 (internal quotations omitted). As explained below, Bailey has failed to make this required showing.

In his motion, Bailey makes several claims about Officer Momme's affidavit. (*See* Doc. No. 90 at 1.) At the outset, the Court notes that Officer Momme was not the affiant of the search warrant of Bailey's car. (Doc. No. 94 at 12.) Instead, Detectives William Lackman and Edward Davis were. (*Id.*) Still, Detective Lackman interviewed Officer Momme and summarized Officer Momme's observations in the affidavit of probable cause. Because Detectives Lackman and Davis relied on Officer Momme's observations in their affidavit, the Court will proceed to analyze Bailey's claims. *See United States v. Calisto*, 838 F.2d 711, 714 (3d Cir. 1988) ("As the Supreme Court noted in *Franks*, 'police [can]not insulate one officer's deliberate misstatement merely by relaying it through an officer-affiant personally ignorant of its falsity.'" (citing *Franks*, 438 U.S. at 164 n.5)).

Bailey first claims that Officer Momme lied in his interview with Detective Lackman about seeing a gun in his car because his windows were so tinted that it would be impossible for Officer Momme to see inside his car. (Doc. No. 90 at 1.) This claim fails for two reasons. For one, Officer Momme credibly testified at the suppression hearing that he had observed a firearm in Bailey's car when Bailey rolled down his window a few inches during the traffic stop. (Rough Hr'g. Tr. at 17:18–21.) And indeed, Officer Momme's body camera footage showed that he told Bailey he had seen a firearm in the car, and Bailey responded that it was just a toy.[1] So, the affidavit correctly stated that Officer Momme observed a firearm in Bailey's car during the stop. Next, Officer Momme also credibly testified that he saw at least one firearm when he looked into

_____

[1] At the suppression hearing held on November 20, 2024, the Government played the body camera footage of Officer Momme from the night of May 31, 2023. This footage was admitted as Government's Exhibit 1. (*See* Rough Hr'g. Tr. at 16:15–17:3.)

the unoccupied car.[2]  (*Id.* at 20:13–23, 39:3–8.)  Although the windows were heavily tinted,

Officer Momme used a flashlight and looked through the front windshield, which was not as

tinted as the windows, and observed the bullet proof vest and firearm.  (*Id.* at 47:23–48:4.)  The

Court finds that Officer Momme did not fabricate any evidence, and Detective Lackman did not

knowingly or recklessly include a false statement in his affidavit.  Bailey thus falls well short of

"mak[ing] a substantial preliminary showing that the affiant knowingly or recklessly included a

false statement in or omitted facts from the affidavit."  *Pavulak*, 700 F.3d at 665 (internal

quotations omitted).

Second, Bailey argues that there are inconsistencies between Officer Momme's interview

with Detective Lackman and the affidavit of probable cause.  (Doc. No. 90 at 1.)  Upon closer

inspection, however, the only so-called "inconsistency" is that Officer Momme did not mention

in the interview that he had seen a pistol magazine in Bailey's car, but that fact was included in

the affidavit.  (*Compare* Doc. No. 94 at 14–16, *with* Doc. No. 94 at 12.)  This "inconsistency"

does not show that the factual statement in the affidavit was false.  Plus, even if the statement

about the pistol magazine were inaccurate, "[t]he mere fact of an inaccurate statement will not

suffice under *Franks*."  *United States v. Coles*, 264 F. Supp. 3d 667, 677 (M.D. Pa. 2017).

Instead, Bailey must make a substantial preliminary showing that Detective Lackman included a

false statement in the affidavit "knowingly or with reckless disregard for the truth."  *Yusuf*, 461

F.3d at 383; *see also Franks*, 438 U.S. at 171 (observing that "[a]llegations of negligence or

---

[2] Officer Momme testified during the suppression hearing that he had seen two firearms in plain view in the parked minivan.  (Rough Hr'g. Tr. at 20:21–23, 39:3–8.)  In his interview with Detective Lackman on the night in question, however, he said he had observed only one firearm in plain view in Bailey's car.  (Doc. No. 94 at 14.)  In the affidavit of probable cause, Detective Lackman also reported that Officer Momme had seen only one firearm in the minivan.  (*Id.* at 12.)  Despite this inconsistency, the Court found that Officer Momme's testimony during the suppression hearing that he saw at least one firearm in plain view in the minivan was credible.

innocent mistake are insufficient" to get a *Franks* hearing).  Although Bailey correctly highlights that the pistol magazine was not mentioned in the interview, he lacks evidence that contradicts the factual statement in the affidavit.  Indeed, Detective Lackman could have learned this information before or after the interview.  Without "an offer of proof *contradicting* the affidavit," Bailey has not made a substantial preliminary showing that the statement in the affidavit about the pistol magazine was false or was made knowingly or with reckless disregard for the truth. *United States v. Desu*, 23 F.4th 224, 234 (3d Cir. 2022) (emphasis added) (internal quotations omitted).

In addition, this alleged misstatement "in the search warrant affidavit" is of "only peripheral relevancy to the showing of probable cause, and . . . did not go to the integrity of the affidavit." *Franks*, 438 U.S. at 163 (internal quotations omitted).  The pistol magazine was not material to the probable-cause finding.  Officer Momme lawfully pulled Bailey over, observed a firearm in his car, and once he told Bailey that he saw the firearm, Bailey claimed it was a toy and then fled in his minivan.  (Doc. No. 94 at 12.)  Later that night, Officer Momme located the same minivan and spotted a firearm in plain view.  (*Id.*)  These facts alone, which were all included in the affidavit of probable cause, are more than enough to establish probable cause to search Bailey's car.  *Cf. United States v. Laville,* 480 F.3d 187, 195 (3d Cir. 2007) (explaining that it is "well established that where police officers reasonably suspect that an individual may be engaged in criminal activity, and the individual deliberately takes flight when the officers attempt to stop and question him, the officers generally no longer have mere reasonable suspicion, but probable cause").  Because the statement in the affidavit about the pistol magazine was not necessary to the showing of probable cause, Bailey is not entitled to a *Franks* hearing for this reason too.

Third, Bailey claims that Officer Momme misrepresented what Bailey had said during the traffic stop.  (Doc. No. 90 at 1–2.)  In an interview with Detective Lackman and during a preliminary hearing in state court, Officer Momme reported that Bailey had said he was not answering any questions during the traffic stop.  (Doc. No. 94 at 15; Def. Ex. 2 at 45:10–14.[3])  The key issue for Bailey's claim is that Detective Lackman did not include this information in the affidavit.  Rather than recite what Officer Momme remembered about what was said during the stop, Detective Lackman stated in the affidavit that the driver "was uncooperative" during the stop.  (Doc. No. 94 at 12.)  Bailey does not challenge this statement in the affidavit, nor has he demonstrated that this statement was "necessary to the finding of probable cause."  *Pavulak*, 700 F.3d at 665 (internal quotations omitted).  So, Bailey's request for a *Franks* hearing fails on this ground.

Fourth, Bailey says Officer Momme incorrectly told Detective Lackman that Bailey's high beams were constantly on.  (Doc. No. 90 at 1.)  Even if Officer Momme was mistaken about Bailey's one front light being on high beams, this fact was not included in the affidavit, so Bailey has not shown that Detective Lackman included a false statement in the affidavit "knowingly or with reckless disregard for the truth."  *Yusuf*, 461 F.3d at 383.  Because this alleged "false statement" was not included in the affidavit, this ground does not warrant a *Franks* hearing. *Pavulak*, 700 F.3d at 665 (internal quotations omitted).

The Court reaches the same conclusion for Bailey's fifth and sixth claims—(5) Officer Momme has several pending internal affairs investigations and (6) items were missing from the

---

[3] Defense Exhibit 2 is the transcript of a preliminary hearing in state court that was introduced during the suppression hearing.  (*See* Rough Hr'g. Tr. at 34:2–10.)

property receipt of his car.[4]  Neither of these claims go to the statements made in Detective Lackman's affidavit, so they do not entitle Bailey to a *Franks* hearing either.

In sum, to get a *Franks* hearing, Bailey needed to "(1) make a substantial preliminary showing that the affiant knowingly or recklessly included a false statement in or omitted facts from the affidavit, and (2) demonstrate that the false statement or omitted facts are necessary to the finding of probable cause."  *Pavulak*, 700 F.3d at 665 (internal quotations omitted).  Because he has not done so here, the Court denies his motion.  An accompanying order follows.

---

[4] Bailey also argues that because items were missing from the property receipt of his car, Officer Momme must have searched his car before getting a warrant.  (Doc. No. 90 at 1.)  At the suppression hearing, Bailey asked Officer Momme point blank if he "entered the vehicle before the warrant" was issued.  (Rough Hr'g. Tr. at 46:14.)  Officer Momme responded, "Absolutely not."  (*Id.* at 46:15.)  Detective Lackman also testified the car was searched only *after* a search warrant was obtained.  (*Id.* at 79:8–11.)  Officer Momme was not present for the search.  (*Id.* at 47:1–2.)  Because the Court finds the testimony of these witnesses credible, the Court rejects this argument.

Additionally, the Court gave Bailey wide latitude during his cross examination at the suppression hearing and permitted Bailey to ask Officer Momme about the pending IAD investigations.  (*Id.* at 25:2–26:17.)  Officer Momme testified that he did not know anything about the investigations.  (*Id.*)